442 S.E.2d 437

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**Denzil G. BUSH, Jr., Defendant Below, Appellant.**

No. 21899.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 18, 1994.

Decided March 25, 1994.

Jacquelyn I. Custer, Asst. Atty. Gen., Charleston, for appellee.

Robert C. Gorey, Jr., Clagett & Gorey, Fairmont, for appellant.

PER CURIAM:

The defendant appeals two second degree murder convictions arising from the killing of his former girlfriend and her boyfriend. The defendant testified at trial and acknowledged that he shot both victims. His primary assignment of error is that the State violated his Fifth Amendment right against self-incrimination by having two witnesses, who performed psychological examinations of the defendant, testify about his mental condition.

Prior to trial, the State filed a motion requesting notice of a defense based upon a mental condition, and asked the defendant to disclose whether he intended to rely on an insanity defense. The defendant responded in a somewhat equivocal fashion that he "may rely upon the defense of insanity ... but if he does so, does not intend to introduce any expert testimony[.]" The circuit court ordered that a psychological examination of the defendant be performed. Thereafter, the defendant was examined by Dr. William Fremouw, a licensed clinical psychologist.

As part of his defense at trial, the defendant maintained that he was not capable of committing first degree murder because he was under the influence of drugs and alcohol.[1] The defendant argued to the jury that the effect of his drug and alcohol use made it impossible for him to commit the crimes with the necessary malice, deliberation, and premeditation.

## I.

■ The defendant first complains that the testimony of Robin Straight, a licensed clinical social worker, and Dr. Fremouw was inadmissible because their opinions were based, in part, on statements made by the defendant during the course of psychiatric evaluations performed at the request of the State. The defendant argues that the testimony violated his right against self-incrimination provided under the Fifth Amendment to the United States Constitution,[2] and Section 5 of Article III of the West Virginia Constitution.[3] We disagree.

Initially, we note that Ms. Straight was qualified as an expert in her field. Ms. Straight examined the defendant at the request of the sheriff's department, and testified at trial that she found the defendant "to be fully oriented to person, place and time. There was no evidence of hallucinatory [or] ... delusional thinking. His recent and remote memory were fully intact. He showed no peculiarities in his mood or affect. His general fund of information was not impoverished." Ms. Straight also said the defendant was cooperative and was not suicidal, but was tearful at times which she attributed to stress. Ms. Straight also opined that the defendant was able to formulate intent at the time of shooting based upon his "self-reported history" and her evaluation of him which was conducted within several hours of the crime.

---

1. The defendant also argued that the crime was committed in the heat of passion.

2. The relevant part of the Fifth Amendment to the United States Constitution provides that "[n]o person ... shall be compelled in any criminal case to be a witness against himself[.]"

3. The relevant part of Section 5 of Article III of the West Virginia Constitution states that "[n]o person shall ... in any criminal case, be compelled to be a witness against himself[.]"

Similarly, Dr. Fremouw, who is an expert in his field, stated that the defendant was "not suffering from a psychotic condition, he [was] not mentally retarded and the effects of drugs or alcohol did not diminish his ability to premeditate."

The record is clear that during the course of their testimony, neither expert revealed any incriminating statements the defendant may have made to them in regard to the commission of the murders. They only testified as to the defendant's mental status and his self-reported drug use.

We discussed a defendant's constitutional right against self-incrimination in the context of court-ordered psychiatric examinations in *State v. Jackson,* 171 W.Va. 329, 298 S.E.2d 866 (1982). In *Jackson,* we said that both the Fifth Amendment to the United States Constitution and Section 5 of Article III of the West Virginia Constitution apply to court-ordered psychiatric examinations. 171 W.Va. at 334, 298 S.E.2d at 871. We reasoned that if a defendant, while in the custody of the State, is evaluated by a court-ordered psychiatrist, the psychiatrist becomes a State agent for the purpose of analyzing a self-incrimination claim. 171 W.Va. at 333, 298 S.E.2d at 870.

To prevent constitutional violations, *Jackson* qualified what information a psychiatrist could relay to the jury. We said a psychiatrist should exclude any specific statements a defendant made regarding the criminal offense. 171 W.VA. at 334, 298 S.E.2d at 871. However, in *Jackson,* we did say that a psychiatrist can testify about the basis of a medical opinion as to the defendant's mental condition. 171 W.Va. at 334, 298 S.E.2d at

871. *See also State v. Rhodes,* 166 W.Va. 402, 274 S.E.2d 920 (1981).

In *Marano v. Holland,* 179 W.Va. 156, 366 S.E.2d 117 (1988), we dealt with psychiatric testimony as to the defendant's mental condition, but found the testimony did not relate to any incriminating testimony concerning the circumstances of the crime itself. Thus, we found no constitutional violation and concluded in Syllabus Point 8 of *Marano:*

> "The Fifth Amendment privilege against self-incrimination has been interpreted to provide protection only where incriminating evidence of a testimonial or communicative nature is sought from a witness through the vehicle of state compulsion." [4]

As previously mentioned, neither Dr. Fremouw nor Ms. Straight mentioned anything about the actual murders, what led up to the murders, or any of the defendant's statements regarding the murders. The only subjects they testified about were the defendant's mental state and his drug use. Therefore, Dr. Fremouw's and Ms. Straight's testimony [5] did not violate the defendant's constitutional right against self-incrimination nor the principle set forth in *Jackson* and *Marano.*

## II.

The defendant's second argument is that both Dr. Fremouw's and Ms. Straight's testimony should have been excluded under Rule 12.2(c) of the West Virginia Rules of Criminal Procedure because the defendant did not introduce any evidence of a defense of insanity or diminished capacity.[6]

---

4. Much the same prohibition against the use of a defendant's incriminating statements about the criminal event is contained in Rule 12.2(c) of the West Virginia Rules of Criminal Procedure:

    "*Mental Examination of Defendant.* In an appropriate case the court may, upon motion of the attorney for the state, order the defendant to submit to a mental examination by a psychiatrist or other expert designated for this purpose in the order of the court. No statement made by the defendant in the course of any examination provided for by this rule, whether the examination be with or without the consent of the defendant, no testimony by the expert based upon such statement, and no other fruits of the statement shall be admitted

in evidence against the defendant in any criminal proceeding *except on an issue respecting mental condition on which the defendant has introduced testimony.*" (Emphasis added).

5. Although we recognize that Ms. Straight did not perform a "court-ordered" evaluation of the defendant, she was no less hired by the State and, thereby, acted as an agent of the State by performing the examination at the request of the sheriff's department. Therefore, the same self-incrimination analysis applies to her testimony.

6. For the text of Rule 12.2(c), W.Va.R.Crim.P., see note 4, *supra.*

Defense counsel timely objected to, and later moved to strike Ms. Straight's testimony.[7] The circuit court denied both objections. Defense counsel also objected near the beginning of Dr. Fremouw's testimony arguing that the defendant's competency was not at issue in the case and the defendant was not going to present any evidence of insanity. Instead of insanity, defense counsel stated that the defendant would present evidence of "the circumstances leading up to the shooting. In otherwords, the passion, absence of malice, voluntary manslaughter. Second degree murder type defense."

Although defense counsel is correct in stating that insanity was not used as a defense, it is clear from the record that the defendant's competency was at issue. Prior to Ms. Straight's and Dr. Fremouw's testimony, defense counsel questioned the State's witnesses on cross-examination about the defendant's drug and alcohol abuse. Later, the defendant himself testified about his drug and alcohol abuse. Moreover, at the conclusion of the trial, the jury was instructed that it could consider the effects of drugs and alcohol in evaluating whether the defendant "could or could not act with malice, premeditation or deliberation."[8]

■ We have approved a defendant's theory that voluntary intoxication may reduce a first degree murder charge to second degree murder. In Syllabus Point 8 of *State v. Hickman*, 175 W.Va. 709, 338 S.E.2d 188 (1985), we stated:

> " 'Voluntary drunkenness is generally never an excuse for a crime, but where a defendant is charged with murder, and it appears that the defendant was too drunk to be capable of deliberating and premeditating, in that instance intoxication may reduce murder in the first degree to murder in the second degree, as long as the specific intent did not antedate the intoxi-

cation.' Syllabus Point 2, *State v. Keeton*, 166 W.Va. 77, 272 S.E.2d 817 (1980)."

*See also State v. Brant*, 162 W.Va. 762, 252 S.E.2d 901 (1979); *State v. Burdette*, 135 W.Va. 312, 63 S.E.2d 69 (1950); *State v. Phillips*, 80 W.Va. 748, 93 S.E. 828 (1917).

In the present case, it is evident that the defendant presented intoxication as one defense. Rule 12.2(c) specifically permits the admission of testimony by an expert who performed a court-ordered evaluation of a defendant on matters in which the defendant "has introduced testimony." Here, the defendant put his competency at issue by suggesting to the jury that his alcohol and drug use diminished his capacity to formulate a specific intent to kill, reducing the murders from first to second degree. Since the defendant raised this defense, the prosecuting attorney was justified in presenting evidence that the defendant was able to form intent.[9]

For the foregoing reasons, we affirm the judgment of the Circuit Court of Marion County.

Affirmed.

---

7. The defendant is represented by different counsel on appeal.

8. This specific jury instruction read: "In evaluating the evidence in this case you may consider whether the defendant was under the influence of alcohol, drugs or narcotics, or under the influence of not having drugs or narcotics to the extent that he could or could not act with malice, premeditation or deliberation."

9. The defendant also argues that Ms. Straight's and Dr. Fremouw's testimony about his ability to formulate intent was an ultimate issue for the jury to decide. We find that the defendant failed to properly object at trial to any of the testimony on this ground, and, therefore, we decline to address the issue. *See State v. McFarland*, 175 W.Va. 205, 332 S.E.2d 217 (1985).